1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10    UNITED STATES OF AMERICA and        Case No. 2:16-cv-04777-MCS-PLA
      the STATES OF CALIFORNIA,
11    COLORADO, CONNECTICUT,
      DELAWARE, DISTRICT OF               **ORDER GRANTING MOTION TO**
12    COLUMBIA, FLORIDA, GEORGIA,         **DISMISS SECOND AMENDED**
      HAWAII, ILLINOIS, INDIANA,          **COMPLAINT (ECF NO. 69)**
13    IOWA, LOUISIANA, MARYLAND,
14    MASSACHUSETTS, MICHIGAN,
      MINNESOTA, MONTANA,
15    NEVADA, NEW JERSEY, NEW
16    MEXICO, NEW YORK, NORTH
      CAROLINA, OKLAHOMA, RHODE
17    ISLAND, TENNESSEE, TEXAS,
18    VERMONT, VIRGINIA, and
      WASHINGTON *ex rel.* ANI
19    GHARIBIAN,
20
21                         Plaintiffs,
22
23                 v.
      VALLEY CAMPUS PHARMACY,
24    INC., D/B/A TNH ADVANCED
      SPECIALTY PHARMACY,
25    DIPLOMAT PHARMACY, INC., and
26    OPTUMRX, INC.,
27
28                         Defendants.

                                    1

1    Defendants Valley Campus Pharmacy, Inc. d/b/a TNH Advanced Specialty
2  Pharmacy, Diplomat Pharmacy, Inc., and OptumRx, Inc. move to dismiss Plaintiff
3  Relator Ani Gharibian's Second Amended Complaint (SAC, ECF No. 68). Mot., ECF
4  No. 69. The matter is fully briefed. Opp'n, ECF No. 70; Reply, ECF No. 71. The Court
5  heard oral argument on August 23, 2021. ECF No. 72. For the following reasons, the
6  Court **GRANTS** Defendants' Motion.

7    **I. BACKGROUND**

8    The Court set forth a detailed summary of the allegations in its order on the prior
9  motion to dismiss. Order Granting in Part and Den. in Part Def.s' Mot. to Dismiss
10 ("Dismissal Order"), ECF No. 66. Plaintiff Relator Ani Gharibian ("Relator"), on behalf
11 of the United States of America, the District of Columbia, and several States
12 (collectively, the "Government"), filed a *qui tam* action against Defendants Valley
13 Campus Pharmacy, Inc. d/b/a TNH Advanced Specialty Pharmacy, Diplomat
14 Pharmacy, Inc., and OptumRx, Inc. (collectively, "Defendants"). Second Am. Compl.
15 ("SAC"), ECF No. 68. Relator brings claims against Defendants for violation of the
16 Federal False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, various state law claims,
17 and insurance fraud claims. *Id*. ¶¶ 136–366.

18    The Court previously dismissed all of Relator's claims with leave to amend.
19 Dismissal Order 27. Relator filed a Second Amended Complaint and Defendants moved
20 to dismiss the Second Amended Complaint. *See* SAC; *see also* Mot.

21    **II. LEGAL STANDARD**

22    Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for
23 "failure to state a claim upon which relief can be granted." "To survive a motion to
24 dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a
25 claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
26 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial
27 plausibility when the plaintiff pleads factual content that allows the court to draw the
28 reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

1    The determination of whether a complaint satisfies the plausibility standard is a

2    "context-specific task that requires the reviewing court to draw on its judicial

3    experience and common sense." *Id.* at 679. Generally, a court must accept the factual

4    allegations in the pleadings as true and view them in the light most favorable to the

5    plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los*

6    *Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true

7    a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (2009)

8    (quoting *Twombly*, 550 U.S. at 555).

9    Averments of fraudulent conduct are subject to the heightened pleading standard

10   of Rule 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).

11   Because an FCA claim alleges fraud, the Rule 9(b) heightened pleading standard

12   applies. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th

13   Cir. 2011). To meet Rule 9(b), a plaintiff must "state with particularity the

14   circumstances constituting fraud." Fed. R. Civ. P. 9(b). The complaint must identify the

15   "who, what, when, where, and how" of the fraudulent misconduct, "as well as what is

16   false or misleading about" it, and "why it is false." *Cafasso*, 637 F.3d at 1055 (internal

17   quotation marks omitted). "[A]llegations of fraud must be 'specific enough to give

18   defendants notice of the particular misconduct which is alleged to constitute the fraud

19   charged so that they can defend against the charge and not just deny that they have done

20   anything wrong.'" *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180

21   (9th Cir. 2016) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

22   **III.   DISCUSSION**

23   **A. The Anti-Kickback Statute**

24   Defendants argue that Relator fails to plead with particularity the remuneration

25   and scienter elements of the Anti-Kickback Statute ("AKS"). Mot. 6–11. As explained

26   below, Relator's AKS claims fail because she has insufficiently pleaded those two

27   elements.

28   / / /

1        The AKS states that whoever knowingly and willfully solicits, receives, offers,

2    or pays any remuneration in exchange for referral of an individual for the furnishing of

3    any item or service for which payment may be made under a Federal health care

4    program shall be guilty of a felony. *See* 42 U.S.C. § 1320a-7b(b)(1)-(2). The statute has

5    been interpreted to cover any arrangement where at least one purpose of the

6    remuneration was to obtain money for the referral of services or to induce further

7    referrals. *United States v. Kats*, 871 F.2d 105 (9th Cir. 1989). Generally, the AKS does

8    not require proof of a *quid pro quo*, or that any payment or referral was made. *See*

9    *Hanlester Network v. Shalala*, 51 F.3d 1390, 1397 (9th Cir. 1995). When a violation of

10   the AKS forms the basis of an FCA claim, however, the claimant must establish a

11   connection between the alleged kickback scheme and actual false claims submitted to

12   the government. *See United States v. Vista Hospice Care, Inc.*, No. 3:07-cv-00604-M,

13   2016 WL 3449833, at *24 (N.D. Tex. June 20, 2016) ("An FCA claim dependent on

14   the AKS needs to meet all of the other elements of an FCA claim. . . . In other words,

15   Relator must show not only that Defendants paid, or offered to pay, remuneration in

16   exchange for referrals, but also that payments led to false certifications or claims.").

17        Defendants contend that Relator has failed cure the deficiencies previously

18   discussed by this Court pertaining to the AKS claims. Mot. 7–11. The Court agrees with

19   Defendants that many of Relator's new allegations are previously rejected arguments

20   from its opposition to Defendants' first motion to dismiss. *Compare* SAC ¶¶ 74, 75, 77,

21   79, 96–98 *with* Opp. to Mot. to Dismiss FAC 20–22, 24, ECF No. 57. Relator also fails

22   to provide any new allegations that are relevant to the factors outlined in the Office of

23   the Inspector General for the Department of Health and Human Services ("DHHS-

24   OIG") advisory opinion No. 10-13 that the Court previously cited. DHHS-OIG

25   Advisory Op. No. 10-13, 2010 WL 3483531, at *4. Further, Relator's argument that

26   DHHS-OIG guidance No. 12-10 found PA services to always be remunerative is

27   incorrect. DHHS-OIG Advisory Op. No. 12-10, 2012 WL 4753657, at *3 ("Obtaining

28   pre-authorization from insurers is an administrative service with potential independent

1 | value to physicians."). DHHS-OIG guidance 12-10 states that determining the value of
2 | PA services "depends on the facts and circumstances." *Id*. But Relator has not provided
3 | any facts and circumstances such as ancillary agreements with physicians to award
4 | referrals or allegations that Defendants only provided the service to select physicians.
5 | Relator's allegations consisting of another company's white paper and a study done in
6 | 2020 do not create a plausible inference that any physicians here received PA services
7 | that would be considered remuneration. *United States ex rel. Suarez v. AbbVie Inc.*, No.
8 | 15 C 8928, 2019 WL 4749967, at *9 (N.D. Ill. Sept. 30, 2019) ("Relator does not allege
9 | that any doctors (let alone any specific doctors) reduced their expenses or downsized
10 | their own staff as a result of Ambassadors' support services.") Relator still has not made
11 | a plausible showing that Defendants' free PA services constitute remuneration.

12 |       Further, Relator has failed to adequately plead facts to show scienter. Relator is
13 | correct that Rule 9(b) provides that while "a party must state with particularity the
14 | circumstances constituting fraud or mistake," "[m]alice, intent, knowledge, and other
15 | conditions of a person's mind may be alleged generally." Opp'n 10; *United States v.*
16 | *Corinthian Colleges*, 655 F.3d 984, 996 (9th Cir. 2011); *In re GlenFed, Inc. Sec. Litig.*,
17 | 42 F.3d 1541, 1547 (9th Cir. 1994) (Rule 9(b) means that "plaintiffs may aver scienter
18 | generally, just as the rule states–that is, simply by saying that scienter existed.") And
19 | Relator is correct in contending that she sufficiently alleges in the SAC that Defendants
20 | had the intent to induce referrals. *See* SAC ¶ 100 ("Defendants knew that they were
21 | offering to provide valuable services . . . in exchange for those customers' orders.") But
22 | Relator is mistaken in claiming that intent to induce is all the AKS scienter element
23 | requires. Opp'n 10–12. The scienter element includes both the intent to induce referrals
24 | *and* the knowledge that one's conduct is unlawful. *See* 42 U.S.C. § 1320a-7b(h); *see*
25 | *also Hanlester*, 51 F.3d at 1400. Relator never alleges, even generally, that Defendants
26 | *knew* that their offer of free PA services was unlawful. In fact, Relator's allegations
27 | seem to indicate that Defendants thought their offering of PA services was lawful, as
28 | they advertised these services openly on their website and in a presentation in Las

1    Vegas. SAC ¶¶ 85, 90. This behavior coincides more with merely the intent to use these

2    PA services as a "sales and marketing tool," and not a knowingly unlawful means of

3    obtaining referrals. SAC ¶ 100. Relator's allegations do not support a plausible

4    inference of scienter. *See Winter ex rel. United States v. Gardens Reg'l Hosp. & Med.*

5    *Ctr., Inc.*, 953 F.3d 1108, 1122 (9th Cir. 2020) (explaining that a plaintiff need only

6    merely allege facts to where a court can plausibly infer the scienter).

7            Based on the foregoing, the Court finds that Relator fails to plead allegations

8    sufficient to support a claim that Defendants violated the AKS and **GRANTS**

9    Defendants' Motion to Dismiss Relator's AKS claims.

10                        **B. The Alleged FCA Violations**

11           The FCA makes it unlawful for any person who "knowingly presents, or causes

12   to be presented, a false or fraudulent claim for payment or approval; knowingly makes,

13   uses, or causes to be made or used, a false record or statement material to a false or

14   fraudulent claim; [or] conspires to commit a violation of" section 3729(a)(1). 31 U.S.C.

15   § 3729(a)(1)(A)–(C). "[A] successful False Claims Act claim requires: '(1) a false

16   statement or fraudulent course of conduct, (2) made with scienter, (3) that was material,

17   causing (4) the government to pay out money or forfeit moneys due.'" *U.S. ex rel. Rose*

18   *v. Stephens Inst.*, 909 F.3d 1012, 1017 (9th Cir. 2018) (quoting *U.S. ex rel. Hendow v.*

19   *Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006)). Defendants argue that Relator's

20   claims based on phone calls and faxes fail to allege that a government payor received

21   any more than two phone calls, fail to allege that the false statements were material, and

22   fail to allege that the required specificity related to falsified medical records is present.

23   Mot. 12–18.

24                        i.   Government Payor

25           Defendants again argue that Relator has failed to identify the government's

26   involvement in any of the alleged false claims. "Evidence of an actual false claim is 'the

27   *sine qua non* of a False Claims Act violation.'" *United States ex rel. Aflatooni v. Kitsap*

28   *Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002) (quoting *United States ex rel.*

1 | *Clausen v. Lab'y Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002)). The Ninth

2 | Circuit does not require a relator to identify specific, representative examples of false

3 | claims to sufficiently demonstrate evidence of a false claim. See *Ebeid ex rel. U.S. v.*

4 | *Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). To satisfy Rule 9(b) pleading standards

5 | for an FCA claim, relators must allege "particular details of a scheme to submit false

6 | claims paired with reliable indicia that lead to a strong inference that claims were

7 | actually submitted." *See id*. at 998–99 (quoting *United States ex rel. Grubbs v.*

8 | *Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)). Allegations made "on 'information and

9 | belief' must state the factual basis for the belief" in order to meet the governing

10 | heightened standard. *See United States v. Ctr. for Diagnostic Imaging, Inc.*, 787 F.

11 | Supp. 2d 1213, 1221 (W.D. Wash. 2011) (citing *Neubronner v. Milken*, 6 F.3d 666, 672

12 | (9th Cir. 1993)).

13 |       The Court previously found that only one allegation identified a government

14 | payor. Dismissal Order 17, 18. Even after filing the SAC, most of Relator's allegations

15 | still only allege that private payors received calls. *See* SAC ¶¶ 106, 107, 108, 110, 113,

16 | 115. For other calls, Relator now states that the patient "on information and belief, is a

17 | Medicare beneficiary" and bases this assertion on the fact that "approximately 94% of

18 | people" over the patient's age "are federal health care program beneficiaries." SAC ¶¶

19 | 109 n.11, 111 n.12, 112 n.13. However, this does not change the Court's previous view

20 | that Medicare eligibility "alone fails to establish a government payor actually processed

21 | a false claim." Dismissal Order 17 (citing *United States v. Gen. Hosp. Corp.*, No. 15-

22 | cv-11890-ADB, 2018 WL 1586027, at *7 n.7 (D. Mass. Mar. 30, 2018) ("Eligibility

23 | alone, however, does not necessarily show with particularity that claims were

24 | submitted.")) Relator's new allegations are far more limited than those in *United States*

25 | *v. Orthopedic All., LLC*, No. CV 16-3966 MWF (SKx), 2020 WL 8173025 (C.D. Cal.

26 | Nov. 19, 2020), which Relator cites as support. Opp'n 12, 13. There, the Court found

27 | that the allegations created a "reliable indicia that lead to a strong inference that claims

28 | were actually submitted" in part because the allegations in that case were that "Medicare

1  was billed" for a high percentage of surgeries using products relevant to the case and

2  specific doctors used the products to perform surgeries on Medicare eligible patients.

3  *See Orthopedic All., LLC*, 2020 WL 8173025 at *6, *7 (quoting *Ebeid*, 616 F.3d at 998).

4        This leaves only two potential false claims that may implicate a government

5  payor. SAC ¶¶ 105, 114. The Court previously found that one of Relator's allegations

6  "support[s] liability" for a "false claim made to the government." Dismissal Order 18.

7  Relator has added further information to one of its claims and alleges that "Ms.

8  Hairapetian called CVS Caremark to make a prior authorization request for Remicaid .

9  . . for a California patient covered by a WellCare plan." SAC ¶ 114. "The prescriber

10  was Dr. Yoon Min" and "Ms. Hairapetian told the Caremark representative that she was

11  a 'prior authorization coordinator for Dr. Min's office.'" *Id*. After "[t]he Caremark

12  representative [] transferred the call to" a WellCare representative, the "representative

13  asked" if Ms. Hairapetian was "calling from a pharmacy or from a doctor's office." *Id*.

14  (internal quotation marks omitted). Ms. Hairapetian then stated she was "Dr. Min's prior

15  authorization coordinator" and asked if the representative needed "the prescriber's NPI

16  number." *Id*. (internal quotation marks omitted). "An authorization decision was not

17  made during the call." *Id*. The allegations in paragraph 114 provide the "who, what,

18  when, where, and how" of the fraudulent misconduct, "as well as what is false or

19  misleading about it." *Cafasso*, 637 F.3d at 1055.

20        Despite having another chance to amend her complaint, only the allegations in ¶¶

21  105, 114 are sufficient to identify government payors.

22            ii.  Materiality

23        Defendants also contend that the Court should dismiss Relator's FCA claims

24  because Relator fails to plead the materiality element with particularity. Mot. 13–17.

25  "Under any understanding of the concept, materiality 'look[s] to the effect on the likely

26  or actual behavior of the recipient of the alleged misrepresentation." *Universal Health*

27  *Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2002 (2016). Materiality is a

28  demanding standard and the FCA is not "a vehicle for punishing garden-variety

8

breaches of contract or regulatory violations." *Id*. at 2003. Even if compliance with a particular regulation is a condition of payment, it is not automatically material. *Id*. The Supreme Court has supplied the following guidance for determining materiality:

> [P]roof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement. Conversely, if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material. Or, if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material.

*Id*.

Relator has amended her complaint to include more regulations and industry guidance that allegedly support the materiality element. SAC ¶¶ 23–25. Relator also cites "intervened and criminal complaints" involving prior authorization. Mot. 16; SAC ¶¶ 124–127. The amendments still do not show "that the insurers would have refused to pay had they known of the falsehood." Dismissal Order 20. As Defendants point out, Relator's allegations show that various people can seek PA in certain instances. SAC ¶¶ 23–25. Additionally, Relator's citations to state laws and "[p]ublic and private insurers' rules and authorization forms" are not enough to establish materiality. SAC ¶¶ 44–48; *Escobar*, 136 S. Ct. at 2003.

The intervened and criminal complaints also involve far more egregious conduct than is present in this case. *See* SAC ¶ 124–127. Though Relator focuses in on the common denominator of PA services, the cited cases contain other relevant conduct that distinguishes it from this present case. The conduct includes, but is not limited to, fabricating medical information, "double-billing for chemotherapy drugs," "PA requests containing lies about medical conditions," "lavish meals and speaking fees"

1  combined with "false and misleading PA requests using canned medical justifications,"

2  and "promoting and encouraging doctors to write prescriptions for unapproved uses."

3  Mot. 16, 17. Simply put, Relator's amendments do not now show that the "the insurers

4  would have refused to pay had they known of the falsehood." Dismissal Order 20.

5  Despite having the chance to amend the complaint, Relator still fails to plead the

6  materiality element with particularity.

### iii.  Specificity of the Falsified Medical Records

8  The Court previously held that Relator's allegations concerning the specificity of

9  falsified medical records fail to provide "enough detail . . . 'of the particular misconduct

10  . . . so that [they] can defend against the charge.'" Dismissal Order 20, 21 (*quoting*

11  *Ebeid*, 616 F.3d at 999). Relator's minimal amendments do not cure the deficiency.

12  Relator made no substantial changes to the allegations concerning falsified medical

13  records and only added one paragraph detailing a conversation between a "TNH prior

14  authorization employee" and an insurance representative. SAC ¶ 134. In this

15  conversation, the insurance representative provided the TNH employee with three

16  possible reasons for why the patient was going to use the medication. *Id*. The TNH

17  employee stated that all three reasons applied and the insurance representative

18  explained "her system would not allow her to enter multiple reasons for the prior

19  authorization request." *Id*. After asking "which one of three was the purpose," the TNH

20  employee then said the first two reasons applied. *Id*. The insurance representative again

21  stated "she can only pick one reason" and the TNH employee instructed her to pick the

22  first reason. *Id*. Though Relator argues that this paragraph shows the TNH employee

23  "fabricat[ed] patient details to fit the questions being posed," Opp'n 19, it is quite clear

24  the insurance form contained limited options and the TNH employee still picked an

25  applicable reason the patient needed the medication. *Id*. Relator's new allegation does

26  not fix the issues identified in the Court's Dismissal Order.

27  Relator again fails to adequately state a claim upon which relief can be granted.

28  After having the chance to amend the complaint, Relator still has not adequately pleaded

1   materiality and has not provided sufficient detail about the allegedly falsified records.

2   The Court **GRANTS** Defendants' Motion to Dismiss Relator's FCA claims.

3                            **C. State Law Violations**

4                        i.   California Insurance Frauds Prevention Act

5       Defendants argue Relator still does not sufficiently plead violations of the

6   California Insurance Frauds Prevention Act ("CIFPA").[1] In the Dismissal Order, the

7   Court dismissed Relator's CIFPA claims because she did not "include specific

8   allegations of doctors referring patients to Defendants in exchange for their prior

9   authorization services" and allegations about "any private insurers prohibit[ing]

10  pharmacists from seeking prior authorizations." Dismissal Order 26.

11      Relator still has not included allegations to support kickbacks or material

12  misrepresentations. *Supra* III(A), (B)(i). Relator instead adds allegations about two

13  California Court of Appeal cases and another legal conclusion in her SAC to support

14  her claim. SAC ¶¶ 58, 59. Both California Court of Appeal cases contain far different

15  facts from the case before this Court. *State ex rel. Wilson v. Superior Court* ("*Wilson*")

16  involved a drug manufacturer that "targeted high-prescribing physicians, members of

17  formulary committees, and sometimes their families" and provided "lavish gifts" such

18  as "tickets to sporting events and concerts, free rounds of golf, resort vacations, meals,

19  [and] gifts" as a way to "induce" and "reward" physicians for prescribing its drugs. 227

20  Cal. App. 4th 579, 587 (2014). Here, Relator merely alleges that Defendants offered PA

21  services and even offered them if they referred the prescription to another pharmacy.

22  SAC ¶ 91. *People ex rel. Allstate Ins. Co. v. Suh* ("*Allstate*") involved non-attorney

23  defendants that created sham law firms to submit insurance claims and then keep the

24  settlement proceeds. 37 Cal. App. 5th 253, 255 (2019). The California Court of Appeal

25  found this to be a material misrepresentation because "Allstate would not have released

26

27  [1] Relator originally included a claims for violation of the Illinois Insurance Claims
    Fraud Prevention Act ("IICFPA") but filed a notice of dismissal of that claim.

28  Voluntary Dismissal, ECF No. 73. The Court thus **DISMISSES** that claim.

1   settlement proceeds to Suh or Chang or their sham law firms had Allstate known the

2   truth." *Id*. at 260. The SAC simply does not provide sufficient facts to allege that private

3   insurers either prohibited pharmacists from seeking prior authorizations or that private

4   insurers would have refused to pay valid prescriptions if they knew about Defendants'

5   involvement. And though Relator provides examples of Defendants misrepresenting

6   their location when making phone calls to insurers, Relator fails to show how that makes

7   the misrepresentations material. The Court **GRANTS** Defendants' Motion to Dismiss

8   the CIFPA claim.

9                              ii.   State FCA Claims

10      Defendants argue that the Court should dismiss Relator's State FCA claims

11   because she "does not allege that a single misrepresentation, whether by phone or by

12   fax, caused a state . . . to pay a Medicaid claim in violation of a State FCA." Mot. 21.

13   Defendants also argue that Relator fails "to allege that any particular alleged

14   misrepresentation was material to any state payor's decision to pay or even that a

15   specific set of claims were false." *Id*. at 22. Relator recycles arguments the Court

16   previously rejected in its Dismissal Order and does not cite any new allegation about

17   state payors. *See* Opp'n 21, 22. Relator again cites *United States v. TEVA Pharm. USA,*

18   *Inc.*, No. 13 Civ. 3702 (CM), 2016 WL 750720 (S.D.N.Y. Feb. 22, 2016) to support her

19   argument that she does not need to provide information from each government program.

20   *Id*. at 22. However, as Defendants correctly point out, Relator fails to address the

21   Court's prior analysis of *TEVA Pharm. USA, Inc.* and simply reuses previously rejected

22   arguments. Dismissal Order 25. Nothing has changed after Relator had a chance to

23   amend the complaint. The Court **GRANTS** Defendants' Motion to Dismiss the State

24   FCA Claims.

25          **D. Leave To Amend**

26      Relator was unable to cure the deficiencies the Court identified in its order

27   dismissing the First Amended Complaint despite having access to numerous documents

28   and opportunities to amend the complaint in the past. Granting further leave to amend

1  would thus be futile. *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016) (noting

2  that district courts have "particularly broad," "wide discretion in granting or refusing

3  leave to amend after the first amendment" (internal quotation marks omitted)); *Rutman*

4  *Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (affirming denial

5  of leave to amend where amended complaint failed to cure defects identified in order

6  dismissing prior complaint).[2]

7  **IV.  CONCLUSION**

8      For the foregoing reasons, the Court **GRANTS** the Motion. The Court dismisses

9  the SAC without leave to amend. The Court directs the Clerk to enter judgment and

10  close the case.

11

12  **IT IS SO ORDERED.**

13  Dated: October 12, 2021

                                   MARK C. SCARSI

14                                     UNITED STATES DISTRICT JUDGE

---

27  [2] Defendants move to strike certain allegations if the Court grants leave to amend. Mot. 11 n.2. The Court has denied leave to amend and thus **DENIES as moot**

28  Defendants' Motion to Strike.

13